UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY ANN ESTRADA,                    Case No. 16-10524

        Plaintiff,                      Hon. Denise Page Hood
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Stephanie Dawkins Davis
                                        United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 17)**

## I.  PROCEDURAL HISTORY

    A.  Proceedings in this Court

On February 12, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge Denise Page Hood referred this matter to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 3). On July 22, 2016, plaintiff filed a motion for summary judgment. (Dkt. 14). On October 6, 2016, the Commissioner filed a motion for summary judgment. (Dkt. 17). Plaintiff filed a reply and an amended reply. (Dkt. 18, 19). The matter is now ready for report and recommendation.

B.    Administrative Proceedings

On September 12, 2012, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 12, 2012. (Dkt. 12-5, Pg ID 190-194). The Commissioner initially denied plaintiff's disability application on June 26, 2013. (Dkt. 12-3, Pg ID 124-135). Thereafter, plaintiff requested an administrative hearing, and on December 15, 2014, she appeared with counsel before Administrative Law Judge ("ALJ") Mara-Louise Anzalone, who considered her case *de novo*. (Dkt. 12-2, Pg ID 92-122). In a February 17, 2015 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at Pg ID 75-87. The ALJ's decision became the final decision of the Commissioner on June 3, 2016 when, after reviewing additional exhibits,[1] the Social Security Administration's Appeals Council denied plaintiff's request for review. *Id*. at Pg ID 37-42.

For the reasons set forth below, the undersigned recommends that the court

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**DENY** plaintiff's motion for summary judgment, **GRANT** the defendant's motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

## II.     FACTUAL BACKGROUND

Plaintiff was 46 years old, which is defined as a "younger individual," on the alleged disability onset date.  (Dkt. 12-2, Pg ID 85).  Plaintiff has a high school education and past relevant work experience as a home attendant, which is classified as semi-skilled and medium exertion, but was performed at a very heavy exertion level according to plaintiff's testimony.  *Id*.  Plaintiff indicated that the main reasons she is unable to work include her inability to hold, grasp, and lift things, and an inability to sit or stand for prolonged periods of time.  Plaintiff also alleges that she has depression, which manifests as mood swings, and periods of crying and lethargy.

### A.     ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since August 12, 2012, the alleged onset date.  (Dkt. 12-2, Pg ID 77).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease, morbid obesity, arthritis, rotator cuff (both shoulders), bilateral carpal tunnel syndrome, heart condition, hypertension, diabetes, and polyneuropathy (20 CFR 404.1520(c)).  (*Id*.)  At step three, the ALJ found that plaintiff did not have

an impairment or combination of impairments that met or equaled one of the

listings in the regulations. *Id*. at Pg ID 79. The ALJ determined that plaintiff has

the following residual functional capacity:

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> except that she could frequently handle with the right
> and left hand; frequently finger with both arms;
> frequently feel with both hands. She could never climb
> ladders or scaffolds; frequently balance; occasionally
> stoop, kneel, crouch and crawl.

*Id.* at Pg ID 80. At step four, the ALJ determined that plaintiff could not perform

any past relevant work. *Id*. at Pg ID 85. At step five, the ALJ found that, given

plaintiff's age, education, work experience and RFC, there are sufficient jobs that

exist in the national economy that plaintiff can perform. *Id*. Thus, the ALJ

concluded that plaintiff has not been under a disability from the alleged onset date

through the date of her decision. *Id*. at Pg ID 86-87.

    B.    <u>Plaintiff's Claims of Error</u>

    Plaintiff raises three claims of error. First, she argues that the Appeals

Council erred when it would not consider evidence submitted after the ALJ's

decision even though the evidence was both new and material; and good cause

was shown as to why the newly-offered evidence was not submitted before the

ALJ's decision. (Dkt. 14, Pg ID 557). Specifically, plaintiff alleges that the

evidence she submitted was "new" because it was not in existence at the time of the administrative proceeding. Dr. Schinco's medical source statement was signed on May 8, 2015, three months after the ALJ's decision dated February 17, 2015. (*Id*. citing Pg ID 50-53). Plaintiff also argues that the evidence was material because a treating physician (here, Dr. Schinco) is generally the best source for information about a claimant's functional capacity. Among other things, Dr. Schinco opined that plaintiff could miss two days of work per month, which is work preclusive. The medical source statement also concluded that plaintiff could never lift 10 pounds or more and could only occasionally lift less than 10 pounds. (*Id*. at Pg ID 52). Plaintiff argues that this relegates her to less than sedentary work, whereas the ALJ's RFC has her at less-than-light work. Plaintiff also argues there was "good cause" for the fact that Dr. Schinco's statement was not presented to the ALJ before the decision was made—namely because it did not exist. Dr. Schinco did not complete the form until after the ALJ's decision. Plaintiff had requested the RFC opinion prior to the hearing decision, but Dr. Schinco did not complete it until May 8, 2015. For these reasons, plaintiff argues that the court should order a remand so that the ALJ can review the claim in light of the new evidence.

Plaintiff's second argument is that the ALJ improperly evaluated the medical evidence because she did not give appropriate weight to Dr. Jurado's

treating source RFC opinion or otherwise consider diagnostic and other evidence. (Dkt. 14, Pg ID 561). Along with this argument, plaintiff contends that the ALJ did not properly weigh the non-treating physician opinions, and failed to provide the necessary good reasons for rejecting the treating physician opinion, or to say what evidence was inconsistent. Instead, plaintiff claims that the ALJ cherry-picked all of plaintiff's normal physical findings while ignoring findings that contributed to a finding of disability.

Plaintiff's final claim is that the ALJ improperly evaluated her credibility. (Dkt. 14, Pg ID 570). In making her credibility findings, plaintiff argues that the ALJ indicated that the objective medical evidence did not support plaintiff's alleged symptoms and limitations without providing any reasoning regarding what evidence was inconsistent with plaintiff's allegations. Plaintiff further contends that the social security regulations do not require her to be bed-ridden or crippled to be entitled to benefits, rather the relevant question is whether she is able to perform full-time work on a consistent basis.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner first argues that plaintiff failed to carry her burden of proving that additional evidence, not before the ALJ, warrants a remand under sentence six. (Dkt. 17, Pg ID 591). The Commissioner specifically contends that plaintiff has failed to show that the additional evidence she submitted to the

Appeals Council is material, or that there is good cause for having failed to submit it sooner. For both of these reasons, a sentence six remand is not appropriate here.

Furthermore, the Commissioner argues that the ALJ correctly considered the opinion and medical evidence offered. According to the Commissioner, Dr. Jurado was not a treating physician within the meaning of the Agency's regulations at the time he rendered his opinion. Thus, the weight the ALJ afforded to Dr. Jurado's opinion is inapposite. Additionally, because the Disability Determination Services ("DDS") reviewer was a single decision maker, the ALJ rightly could not rely on that opinion. Finally, contrary to plaintiff's contention, the ALJ acknowledged alleged limitations on plaintiff's activities—the fact that the ALJ did not cite to every piece of evidence in the record does not amount to reversible error, as it is well settled that "[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006). Therefore, substantial evidence supports the ALJ's conclusion that plaintiff could perform a range of light work.

Finally, the Commissioner argues that the ALJ appropriately assessed plaintiff's subjective allegations in conformance with 20 C.F.R. § 404.1529(c)(3). (Dkt. 17, Pg ID 602). Here, the ALJ discussed facts, including plaintiff's statements, and provided a reasoned rationale for her assessment. The ALJ

applied the proper standard in this Circuit regarding assessing subjective allegations as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486

F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545. The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky*, 167 Fed. Appx., at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted) (*see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three: If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four: If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his

or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

           1.    Sentence Six Remand

Plaintiff argues that the Appeals Council failed to consider evidence that she submitted after the administrative hearing, that she says supports her claim of disability.  Under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden to demonstrate: (1) that this evidence is both "new" and "material," and (2) that there is a "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005).  Courts "are not free to dispense with these statutory requirements."  *Hollon*, 447 F.3d at 486.  With respect to materiality, plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed. Appx. 547, 550 (6th Cir. 2007).  And, regarding "good cause," it is not established solely based on the fact that the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test.  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964,

966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed. Appx. 593, 598-99 (6th Cir. 2001). Rather, a plaintiff attempting to introduce new evidence must explain <u>why</u> the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r of Soc. Sec.*, 97 Fed. Appx. 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. Appx. 852, 859 (6th Cir. 2003).

Here, while the subject records are plainly "new" in that they were neither presented nor in existence while the record before the ALJ was open (i.e. beginning on or before February 17, 2015), plaintiff has failed to establish that the records are "material," and thus has failed to meet her burden for a sentence six remand. As noted, to show materiality plaintiff must explain how the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. This, she has failed to do. As indicated by the Commissioner, roughly three months after the administrative hearing, plaintiff provided the Appeals Council with an RFC "Medical Source Statement" from Dr. Schinco, dated May 8, 2015. (Dkt. 12-2, Pg ID 50-53). In the Medical Source Statement, Dr. Schinco indicated that he had treated plaintiff on three occasions, May 14, 2013, June 18, 2013, and he noted that on April 12, 2015 he referred plaintiff to the pain clinic. *Id.* at Pg ID 50. The newly-produced Medical Source

Statement contained Dr. Schinco's notation that plaintiff could sit and/or stand for 45 minutes at one time before needing to get up. *Id.* at Pg ID 51. He also noted that plaintiff would not need a job that permits shifting positions at will from sitting, standing or walking, and plaintiff would not need to take unscheduled breaks during the workday. *Id.* Plaintiff was able to lift less than 10 pounds occasionally and could rarely twist, stoop, crouch/squat, climb stairs, and never climb ladders. *Id.* at Pg ID 52. Plaintiff had no significant limitations with reaching, handling or fingering. *Id.* Assuming that plaintiff was trying to work full time, Dr. Schinco estimated that plaintiff would be absent from work as a result of her impairments or treatment about two days per month. *Id.* Dr. Schinco indicated that the earliest date that the description of symptoms and limitations to which the Medical Source Statement applied was May 14, 2013, or the first day he treated plaintiff. *Id.* Notably, Dr. Shinco indicated that plaintiff's impairments as demonstrated by signs, clinical findings, and laboratory or test results were *not* reasonably consistent with the symptoms and functional limitations described in his evaluation. *Id.* Rather, Dr. Schinco indicated a "good" prognosis. *Id.* at Pg ID 50.

To begin with, the undersigned agrees with the Commissioner's contention that Dr. Schinco does not qualify as a treating physician under Agency regulations. Dr. Schinco only treated plaintiff twice during the relevant period (on May 14,

2013 and June 18, 2013) and a third time <u>after</u> the relevant period after a two-year

lapse in April 2015.[2]  (Dkt. 12-2, Pg ID 50, and Dkt. 12-7, Pg ID 369-372).

Moreover, according to the Medical Source Statement, this third appointment may

have been a referral to the pain clinic, rather than an appointment for treatment.

*Id.*  In either case, the court's analysis is the same, for it is well-settled in this

Circuit that these types of minimal visits do not establish the requisite longitudinal

relationship.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. Appx. 496, 507 (6th

Cir. 2006)("[A] plethora of decisions unanimously hold that a single visit does not

constitute an ongoing treatment relationship.... Indeed, depending on the

circumstances and the nature of the alleged condition, two or three visits often will

not suffice for an ongoing treatment relationship."); *Willis v. Comm'r of Soc. Sec.,*

No. 12-10011, 2012 WL 7608133, *9 (E.D. Mich. Oct., 29, 2012) (treating

relationship was not established after plaintiff saw physician only two times before

opinion was issued ... "at the time he issued his opinions, that longitudinal

relationship was not yet established."); *Helm v. Comm'r of Soc. Sec.*, 405 F. Appx.

997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who

examines a patient only three times over a four-month period is a treating

_____

[2] The Medical Source Statement lists the date of the third visit as April 22, 2015.
However, the accompanying medical records submitted to the Appeals Council appear to reflect
the visit as having occurred as early as April 7, 2015, with a number of updates to the records in
the weeks that followed. (Dkt. 12-2, Pg ID 50-69).

source—as opposed to a nontreating (but examining) source."); 20 C.F.R. §

404.1527(c)(2)("[T]reating sources ... are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of your medical impairment(s)

and may bring a unique perspective to the medical evidence that cannot be

obtained from ... reports of individual examinations, such as consultative

examinations or brief hospitalizations." (emphasis added)).  Here, plaintiff's two

visits with Dr. Schinco during the relevant period and a third visit after a two year

lapse (that post-dates the relevant period) does not result in an opinion entitled to

treating-source deference as a longitudinal relationship was not established.

In reviewing Dr. Schinco's records, it is noted that his April 22, 2015 notes

reference an MRI conducted on April 15, 2015; however, there is no narrative to

explain how the MRI results translate into the limitations specified on his Medical

Source Statement.  (Dkt. 12-2, Pg ID 64).  And, his accompanying notes indicate

that plaintiff had normal thoracic and lumbar examinations, with normal ranges of

motion and no tenderness, a normal neurological examination, and a normal gait.

(Dkt. 12-2, Pg ID 64).  To the extent these MRI findings showed a worsened

condition, the undersigned agrees with the Commissioner that the worsening was

after the period under review and, therefore, cannot form the basis for a finding of

disability.  *See, e.g.*, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,

1233 (6th Cir. 1993) ("The rest of the material contained in the additional

evidence pertains to a time outside the scope of our inquiry.").  Indeed, this later

obtained MRI cannot be considered proof of disability unless it is corroborated by

evidence contemporaneous with the eligible period.  *See, e.g., Wladysiak v.*

*Comm'r of Soc. Sec.*, 2013 WL 2480665, *11 (E.D. Mich. 2013) (*citing Lancaster*

*v. Astrue*, 2009 WL 1851407, *11 (M.D. Tenn 2009).

   The undersigned also notes that the Medical Source Statement is itself

internally inconsistent.  For example, Dr. Schinco indicated that plaintiff's overall

prognosis was good which appears to be inconsistent with the extreme limitations

he imposed.  (Dkt. 12-2, Pg ID 50).  There are also several inconsistencies in Dr.

Schinco's functional limitations themselves.  For instance, he opined that plaintiff

could only sit or stand for 45 minutes <u>at one time</u>, but later said she could only sit

or stand for 45 minutes total <u>in an eight-hour day</u>.  *Id.* at Pg ID 51.  Dr. Schinco

also opined that plaintiff did not need a job that allowed for shifting from sitting,

standing, or walking, but then said she needed to walk around every hour for five

minutes, and that she did not need any unscheduled breaks.  *Id.; see* C.F.R. §

404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a

whole, the more weight we will give that opinion.").  It is also curious that Dr.

Schinco admits that plaintiff's impairments <u>are not</u> reasonably consistent with the

symptoms and functional limitations described in his evaluation.  (Dkt. 12-2, Pg

ID 53).

Other record evidence also belies Dr. Schinco's Medical Source Statement, including the report from consultative examiner, Dr. Sankaran. (Dkt. 12-7, Pg ID 356-366). Dr. Sankaran indicated that plaintiff was able to ambulate with a "normal gait." *Id.* at Pg ID 358. Plaintiff was able to touch her toes and was able to squat completely. *Id.* Plaintiff had some tenderness in her lumbar area and some muscle spasm present; however, she had normal range of motion in the lumbar spine. *Id.* Plaintiff was able to open a jar, button clothing, write legibly, pick up a coin, and tie shoelaces with both hands. *Id.* Morever, despite a history of bilateral rotator cuff tear, Dr. Sankaran opined that upon clinical examination, plaintiff showed a normal range of motion. *Id.* at Pg ID 359.

The undersigned also notes that plaintiff's daily activities were inconsistent with Dr. Schinco's extreme limitations. For one, plaintiff admitted that she could lift up to 20 pounds. (Dkt. 12-6, Pg ID 219). She also testified that she did the dishes, performed self-care (although at a slower pace), prepared meals, drove a car, shopped with her boyfriend, managed her finances, fished, socialized, and went out to eat, to the library, and to the bank. (*Id*. at Pg ID 220-223, 357); *See Blacha v. Sec'y of Health & Human Servs*., 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").

For all of the above reasons, the undersigned concludes that plaintiff has not

demonstrated that Dr. Schinco's Medical Source Statement would have changed the outcome of the ALJ's decision and, as a consequence, the evidence is not "material." As such, it is not necessary for the court to determine whether plaintiff had "good cause" for failing to present the evidence in the prior proceeding. Though it is notable that plaintiff's explanation that she requested the Medical Source Statement before the ALJ hearing, but did not receive it until after - without more, like information on (1) specifics as to the timing of the request; (2) follow-up efforts with the doctor's office; (3) reasons for the delayed completion; and (4) efforts, if any, to hold the record open until the Medical Source Statement could be completed, seems unlikely to satisfy the "harder line" established by the Sixth Circuit in *Oliver v. Sec'y of Health & Human Servs.*, *supra*. *See also, Cline v. Commissioner of Soc. Sec.,* 96 F.3d 146, 149 (6th Cir. 1996)(Good cause not found: Where claimant's counsel realized, for the first time at hearing that psychiatric evaluation might be useful, "...[c]ounsel should have notified the ALJ of Cline's need for a psychiatric examination as soon as he realized it at the hearing."). Accordingly, a sentence six remand is not appropriate here.

2.      RFC Assessment

Plaintiff next claims that the ALJ erred by not properly crediting the medical opinion of Dr. Jurado. Plaintiff says that Dr. Jurado opined that she could cut a day or so off her regular work schedule and could not work a full-time

schedule.  (Dkt. 12-7; Pg ID 303-309).  Plaintiff also points to nurse practitioner,

Shauna Barbeau's notes, which stated: "Dr. Jurado saw pt 2 weeks ago and made

recommendations for her to limit her work hours to 7 days every 2 weeks ..."[3]

(Dkt. 12-7; Pg ID 303).  With respect to Dr. Jurado's opinion evidence, the ALJ

stated:

> [I]n September 2012, Dr. Jurado opined a work
> modification of *possibly* cutting a day or so off her
> regular work schedule including help with transfer of
> patients; and a weight restriction at work of 20 pounds
> (Ex. 2F/6, 3F/7). I note that Dr. Jurado's treating
> relationship with the claimant, at this point in time, is
> very brief.  Dr. Jurado's opinion is accorded some weight
> to the lifting limit, as it is not inconsistent with the
> record as a whole.  However, there is no support in Dr.
> Jurado's exam or the record for need to alter the
> claimant's typical workweek.

(Dkt. 12-2; Pg ID 85) (emphasis added).

As noted above with Dr. Schinco, the regulations state that a treating

physician is a medical professional who is "able to provide a detailed, longitudinal

picture of [the claimant's] medical impairments ... [that] cannot be obtained from

the objective medical findings alone or from reports of individual examinations,

such as consultative examinations or brief hospitalizations." 20 C.F.R. §

---

[3] The Commissioner indicates that it is unclear where Nurse Barbeau obtained this information; however, it conflicts with Dr. Jurado's September 11, 2012 instructions. (*Compare* Dkt. 12-7; Pg ID 303 *with* Dkt. 12-7; Pg ID 306). As noted *infra* the undersigned concludes that the ALJ rightly discounted Dr. Jurado's opinion regarding the need to alter plaintiff's work schedule.

404.1527(c)(2).  "A physician qualifies as a treating source if the claimant sees her with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Cruse v. Comm'r  Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007); *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir. 2007) (one or two examinations did not establish medical providers as treating physicians under Agency regulations).  Despite plaintiff's claims that she regularly treated with Dr. Jurado, at the time he rendered his opinion, he had only examined plaintiff one time and, therefore, did not possess the longitudinal familiarity accorded to "treating physician" status.  *See* Dkt. 12-7, Pg ID 229-234; *see also* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 404.1502.

Moreover, while the ALJ did not specifically discuss evidence that conflicted with Dr. Jurado's opinion in the paragraph where she discussed his opinion, the ALJ did render a detailed accounting of the record evidence, including a recitation of plaintiff's largely normal consultative examination and an assessment of her daily activities.  As the Sixth Circuit has noted, an ALJ's rationale can reasonably be discerned from a reading of the decision.  *See Bradford v. Secretary of the Dep't Health & Human Servs.,* 803 F.2d 871, 873 (6th Cir. 1986) (ALJ decision should be read as a whole); *Norris v. Comm'r of Soc. Sec.*, 461 F. Appx. 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision

adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"). Thus, it appears that the ALJ did not err in this regard.

Plaintiff also claims that the ALJ erred in not considering Dr. Schinco's opinion in her analysis of why plaintiff could not work full-time. However, Dr. Schinco's opinion concerning work limitations is only found in his Medical Source Statement which, as noted above, cannot be considered as part of the substantial evidence review. The ALJ also did not mention the Disability Determination Services ("DDS") reviewer. The Commissioner is correct, though, that the DDS reviewer was a single-decision maker ("SDM"), and thus, the ALJ could not rely on that opinion. *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, *2 (6th Cir. 1995) ("Generally the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Finally, regarding plaintiff's belief that the ALJ "cherry-picked" the evidence. The undersigned finds that the ALJ engaged in a comprehensive review of the record evidence in developing the RFC here. (Dkt. 12-2; Pg ID 80-85). The ALJ indicated that she had considered all symptoms, objective medical evidence, and other evidence based on the requirements of 20 CFR § 404.1529, SSRs 96-4p and 96-7p. (Dkt. 12-2, Pg ID 80). In her evaluation, the ALJ considered the testimony plaintiff offered during the administrative hearing

regarding her physical and emotional limitations. (*Id*.) She also considered treatment with Dr. Jurado, including testing results (*id*. at Pg ID 80-81), and treatment records from Dr. Schinco and Dr. Akhtar. (Dkt. 12-2, Pg ID 82). The ALJ likewise considered plaintiff's diabetes treatment records and how weight affects plaintiff's ability to perform routine movement and necessary physical activity within the work environment. (*Id*.) Medical evidence from a consultative examination failed to provide objective evidence of the severity of the claimant's reported symptoms. (*Id*. at Pg ID 83). The ALJ also detailed consultative examiner, Dr. Sira Sankaran's findings. In addition, the ALJ noted that physical examination findings suggested that plaintiff is capable of a work capacity consistent with the RFC. (*Id*.) Based on the above, the undersigned concludes that the ALJ's conclusion is supported by substantial evidence and notes that plaintiff's assertion of "cherry picking" the record "is seldom successful because crediting it would require a court to re-weigh evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("'[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.'")).

### 3.    Credibility Assessment

With respect to plaintiff's credibility assessment, plaintiff contends that the

ALJ failed specifically to explain which objective evidence was inconsistent with plaintiff's testimony so as to provide justification to discount plaintiff's credibility. Specifically as to plaintiff's credibility, the ALJ opined:

> In assessing the claimant's credibility, the undersigned first reiterates that the objective medical evidence and clinical examination findings do not corroborate the claimant's alleged symptoms and limitations. The claimant's life style is not consistent with that of a person who is totally disabled. As far as her activities of daily living, the claimant reported she could perform household chores such as dishes and laundry, with extra breaks. She prepares meals and helps care for her cats. She also drives, shops, handles financial matters, and goes fishing. She maintains interpersonal relationships, visits with family, goes out to eat, and goes to the library and bank. Finally, although bathing and dressing take longer, she is able to perform the majority of her own personal care (Ex. 3E, Testimony).
>
> The evidence raises other questions about the claimant's credibility. The claimant collected unemployment benefits after her alleged onset date (Ex. 2D, SD). In order to qualify for such benefits, applications typically must affirm that they are capable of working. Thus, the claimant apparently claimed an ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same period of time, which brings into question the reliability of the claimant's allegations generally. Additionally, the claimant testified that she last worked August 8, 2012, yet during a September 2012 clinical exam she reported she was still working; and in October 2012 clinical exams she reported she was laid off from her job as of the previous week (Ex. 2F/2-3, 3F/25, 28, 31). Although the claimant may not consciously have intended to mislead, I conclude that these factors negatively erode

the credibility of the claimant.

(Dkt. 12-2; Pg ID 84).

An ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 977, 981 (6th Cir. 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (ALJ's credibility assessment is entitled to "great deference," and a claimant's credibility may be properly discounted where an ALJ finds contradictions among medical reports, testimony, and other evidence). Remand is not appropriate where there is substantial evidence to support the ALJ's decision not to fully credit plaintiff's testimony. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.").

Plaintiff suggests that the ALJ erred in her credibility determination by failing to fully consider testimony regarding her limitations and pain symptoms. Yet, the ALJ is not required to discuss every factor in making her credibility

finding.  Additionally, as noted above, the ALJ did discuss plaintiff's daily activities in detail.  (Dkt. 12-2, Pg ID 84).  Moreover, the ALJ carefully catalogued plaintiff's medically determinable impairments; however, she adjudged that plaintiff's statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms were not entirely credible.  (*Id*.)

Plaintiff also complains that the ALJ failed to explain how plaintiff's collection of unemployment benefits after the alleged onset date effected her credibility.  Yet, the ALJ expressly laid out her rationale as follows:

> The claimant collected unemployment benefits after her alleged onset date (Ex. 2D, SD). In order to qualify for such benefits, applications typically must affirm that they are capable of working. Thus, the claimant apparently claimed an ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same period of time, which brings into question the reliability of the claimant's allegations generally. Additionally, the claimant testified that she last worked August 8, 2012, yet during a September 2012 clinical exam she reported she was still working; and in October 2012 clinical exams she reported she was laid off from her job as of the previous week (Ex. 2F/2-3, 3F/25, 28,31). Although the claimant may not consciously have intended to mislead, I conclude that these factors negatively erode the credibility of the claimant.

Dkt. 12-2, Pg ID 84.  In her brief, plaintiff does not challenge any of the factual assertions made by the ALJ, but rather apparently attempts to explain how plaintiff came to be both receiving unemployment benefits and working at the same time.

Plaintiff's explanation buttresses the ALJ's conclusion that plaintiff may not "consciously have intended to mislead." Notwithstanding, it does not undermine the ALJ's credibility determination. The rationale articulated in the ALJ's decision is both reasonable and persuasive. Therefore, there is no reason for the court to disturb the ALJ's conclusion in this regard.

For all of the above reasons, in the view of the undersigned, substantial evidence supports the ALJ's credibility determination, and as there is no "compelling reason" to the contrary. Thus, the ALJ's decision should be affirmed.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned recommends that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 4, 2017                           s/Stephanie Dawkins Davis
                                               Stephanie Dawkins Davis
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>August 4, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov